## Roberts v. Akers.

(Decided February 18, 1915.)

### Appeal from Floyd Circuit Court.

Principal and Agent—The Relation—Estoppel to Deny Agency.— Where one by want of ordinary care, induces a third person to believe that another is his agent, although such ostensible agent is not so in fact, such one is bound by the acts of the apparent or ostensible agent; liability arises for the acts of such ostensible agent not because he is an agent in fact, but because the principal will not be heard to deny the agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent upon the faith of his apparent and ostensible authority.

MAY & MAY, F. A. HOPKINS, J. C. HOPKINS and JAMES GOBLE for appellant.

B. F. COMBS and SMITH & COMBS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

On June 6, 1908, A. J. Roberts and wife conveyed to G. W. Akers a certain tract of land in Floyd County, the deed reciting a consideration of twenty-eight hundred dollars, cash in hand paid, the receipt of which was therein acknowledged.

On August 13, 1913, this suit was filed in the Floyd Circuit Court by Roberts against Akers to recover the sum of twelve hundred and forty dollars, the basis of the suit being a claim that in point of fact only fifteen hundred and sixty dollars of the consideration was actually paid. From a judgment in favor of the defendant the plaintiff appeals.

It appears from the evidence that A. J. Roberts had a son, Charles W. Roberts, who was a traveling salesman, and who was at home only at infrequent intervals.

This son was engaged in the merchandise business near the home of his father, which was on Mud Creek, in Floyd County, the store being conducted by the father, and sometimes by one or two other sons of his.

A. J. Roberts had put into this business for his son, Charles W. Roberts, fifteen hundred dollars, which money he obtained from G. W. Akers, giving him as security therefor a mortgage upon the lands owned by A. J. Roberts.

This merchandise business was not successful, and when Charles W. Roberts came home in June, 1908, he sold it out to Akers. It appears that at the same time Akers proposed also to buy A. J. Roberts' farm, offering therefor $2,800, the $1,500 loan and interest to be deducted from the purchase price. This offer was communicated to A. J. Roberts by his son, Charles W. Roberts, and, on advice of the latter, accepted.

Akers and Charles W. Roberts and a notary went to the home of A. J. Roberts on June 6, 1908, where A. J. Roberts signed and acknowledged a deed conveying his land to Akers for the recited consideration of $2,800 cash in hand paid, the receipt of which was thereby acknowledged. Mrs. Roberts was at the home of her daughter nearby, and Akers, Charles W. Roberts and the notary then went to Mrs. Roberts and she signed and acknowledged the deed.

The next day Akers and Charles W. Roberts made a stated settlement, and Akers paid to Roberts, in the course of that settlement, the balance due on the purchase price of A. J. Roberts' farm. Charles W. Roberts was largely indebted for the merchandise sold by him to Akers, and it seems that it required the proceeds not only of the merchandise, but also the balance of the purchase money on his father's farm to settle his indebtedness. At least, he received the money from Akers, and admits that he did not pay it over to his father.

Immediately after effecting this settlement with Akers he left on a trip, from which he did not return until about six months thereafter. He says that when he did return his father requested a settlement of him, but that he was then and is yet unable to pay him the $1,240.

In the sale by A. J. Roberts to Akers it was agreed that possession was to be given January 1, 1909. About that time Charles W. Roberts returned home; and he

rented the house, garden and a field from Akers, for the occupancy of his father during 1910; Akers used the remainder of the farm himself. A like arrangement was effected for the year 1910, Charles W. Roberts paying rental for both years. He says in testifying that this was a temporary expedient until he could get in position to make a settlement, and was done to reconcile his father, who was demanding a settlement of him.

On January 12, 1911, Charles W. Roberts bought the farm of Akers, and received a conveyance therefor. The consideration was to be $3,400, one-half to be paid in twelve months and the remaining half in two years. Charles W. Roberts then built a house on the place, his father continuing in the occupancy thereof.

On August 6, 1913, being unable to make any payments on it, he reconveyed the farm to Akers; and one week later this suit was instituted.

Akers testified that several weeks after the deed was executed he returned to A. J. Roberts the mortgage which he held as security for the loan of fifteen hundred dollars, and that nothing was then said about the balance of the purchase money; that a short time before January 1, 1909, the day on which he was to give possession, Roberts spoke to him about renting the place, and that when he, Akers, named the price, Roberts said it was too much, and that he would move off when he got the balance of his money; that this is the first time A. J. Roberts ever mentioned the matter to him.

Without rehearsing the testimony in detail, we may say that A. J. Roberts looked to his son, Charles W. Roberts, for the money rather than to Akers; and that he continued to do so for more than five years before bringing this action.

A. J. Roberts executed and acknowledged the deed in question, reciting a fully paid and receipted consideration, and permitted his son, Charles W. Roberts, to take it into his possession, without one word to Akers by way of suggestion or warning concerning any limitations which there might be upon the power of his son to act in the matter of receiving the balance of the consideration; and it seems to us that this state of facts calls for the application of the well-established rule that whenever one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must bear the burden thereof.

It may be conceded that direct proof of an actual agency upon the part of Charles W. Roberts to receive the balance of the purchase money for his father's farm is here lacking.

But, where one by want of ordinary care induces third persons to believe that another is his agent, empowered to perform certain acts, although such ostensible agent is not an agent in fact, such one is bound by the acts of the apparent or ostensible agent. Liability arises for the acts of such ostensible agent, not because he is in point of fact an agent, but because the principal will not be permitted to deny it, to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent upon the faith of his apparent and ostensible authority. See 7 A. S. R., 138; 13 A. S. R., 101; 97 A. S. R., 264; 30 A. S. R., 353; 31 Cyc., 1235.

This, of course, is merely making a specific application, in the law of principal and agent, of the rule that where one of two innocent persons must suffer by the act of a third, the loss should fall upon him whose want of care has made it possible.

Judgment affirmed.