[No. 34309.   Department Two.   May 22, 1958.]

J. Colin Smith et al., Respondents, v. James L. Keating et al., Appellants.[1]

*Brethorst, Fowler, Bateman, Reed & McClure* and *Roy J. Moceri*, for appellants.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie*, and *William M. Holman*, for respondents.

[1]Reported in 326 P. (2d) 60.

FOSTER, J.—This judgment on a promissory note must be reversed because of the error of the trial court in withdrawing the defense of payment from the jury and directing a verdict for the respondents (plaintiffs).

The note (for $6,750) represented the balance of the purchase price ($26,750) of the plaintiffs' home under an executory real-estate contract. To that complaint, appellants pleaded payment, and in support of that affirmative defense, produced evidence summarized as follows:

Respondents listed their home for sale with Charles P. Wolf, then a licensed real-estate broker in Seattle. On August 27, 1955, appellants deposited $1,000 earnest money and signed an earnest money agreement for the purchase of the property for $26,750, which was thereafter executed by both respondents. Respondents, instead of employing a lawyer to draw the necessary contract and conveyance, entrusted their agent, the real-estate broker Wolf, to do so.

Wolf prepared a conventional executory contract for the sale of respondents' home to appellants for $26,750, which, on September 13, 1955, they acknowledged before the same Wolf, a notary public. In it, respondents receipted for $3,000 of the purchase price and provided that an additional $17,000 of the purchase price was to be obtained by a mortgage loan, which, under the contract, was to be disbursed as follows:

"(1) Payment of the balance of the principal and interest of the present existing first mortgage to the National Bank of Commerce, Main Branch. (2) Deduct selling costs. (3) Disburse [sic] and payment of any other lien that may exist. (4) Balance to be paid to the Seller."

The contract required the balance of the purchase price, $6,750, to be represented by a sixty-day promissory note secured by a second mortgage on appellants' real property. The contract further provided:

"The seller agrees, upon receiving full payment of the purchase price and interest in the manner above specified, to execute and deliver to purchaser a Warranty deed to the property, excepting such part thereof which may hereafter be condemned, if any, free of incumbrances except those above mentioned, and any that may accrue hereafter through any person other than the seller."

Pursuant to the executory contract of purchase, appellants took possession on September 13, 1955. The contract contained the usual provisions forfeiting to the seller as liquidated damages all sums paid in the event of the purchasers' default. Payment of all sums due under the contract was a condition precedent to the passing of the title.

Prior to September 13, 1955, respondent husband conversed by telephone with Mr. Jennings of the Securities Mortgage Company, which loaned the $17,000 on the security of the property. Appellant husband overheard the whole of that conversation by means of a loud-speaker. Mr. Smith said that all moneys were to be paid to his agent, the real-estate broker Wolf; whereupon, Mr. Jennings requested written confirmation, which Mr. Smith gave by letter dated September 13, 1955, as follows:

"This is to advise you Charles P. Wolf, Agent, has the authority to direct the disbursements of the funds received from the first mortgage placed on my property at 4502 East 33rd Street, Seattle, Washington, *and settlement of the funds to be received from satisfaction of Real Estate Contract dated 13 September 1955*, for sale of my property." (Italics ours.)

Appellant wife testified that respondent husband told her to deal with Wolf after respondents left Seattle.

Soon after the execution of the executory contract for the sale of their home, respondents left Seattle and moved to New York, taking with them the note for $6,750, which was only approximately 25.23 per cent of the total purchase price.

On or about October 20, 1955, appellants, having completed their financing, went to the office of real-estate broker Wolf to whom they paid the full amount of the note after first examining the letter of September 13th, in which respondents authorized Wolf to receive "settlement of the funds to be received from satisfaction of Real Estate Contract." The money in question was a specifically designated part of the funds "received from satisfaction of Real Estate Contract." Whereupon, agent Wolf delivered to appel-

lants the warranty deed to the property, which was promptly recorded. Title, both legal and equitable, passed.

Respondents admit that the appellants paid the full amount of the note to Wolf, who converted it and never accounted to the respondents. It is refreshing to note that neither party accuses the other of bad faith.

The question, then, is: Was Wolf, respondents' agent, to receive the money in payment of the note in question? He was. The trial court was in error in withdrawing this defense from the jury and directing the verdict in favor of respondents for two reasons: (1) There was adequate evidence of actual authority as respondents' agent to accept the balance of the purchase price; and (2) there was, likewise, ostensible authority to do so.

■ It should be remembered that, in passing upon this motion, respondents' evidence will be disregarded, and the appellants' evidence, and all reasonable inferences therefrom, will be accepted as true.

■ Respondents argue that the fact that Wolf did not have possession of the note at the time of the payment is conclusive evidence of his lack of authority to receive payment as their agent. Such, however, is not the law. Because the remaining one-fourth of the purchase price was represented by a promissory note still in the hands of the original payee, the matter is no different than any other contract liability. Ogden, Negotiable Instruments (5th ed.) 309, chapter 18, § 168. Repeated decisions of this court hold that the agent's possession or nonpossession of a note is merely evidence, but is not conclusive of authority or lack of authority to receive payment. *Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101; *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P. (2d) 612; *Delaney v. Nelson,* 132 Wash. 472, 232 Pac. 292.

· ■ We have here direct testimony that the respondents directed the appellants to deal with the agent Wolf. The appellants, both husband and wife, so testified. Moreover, we have an executory contract for the sale of the real property in which the note in question is specifically identified as part of the purchase price. We have the written direction signed by the respondent husband authorizing payment to

the agent, plus the fact that three-fourths of the purchase price had already been paid directly to him. With those funds, twenty thousand dollars, agent Wolf satisfied the encumbrances on the property and remitted the balance to the respondents by checks which are in evidence. Such, then, are the facts, which are more than sufficient to take the defense of payment to the jury upon the theory of actual agency.

But there is more to support Wolf's authority, for the theory of implied or ostensible authority must be reckoned with. The principal argument advanced by respondent, in answer to the claim of implied or ostensible authority, is that Wolf did not have the note at the time of payment. But in the absence of rights of a holder in due course that is no different than any other contract liability. Ogden, Negotiable Instruments (5th ed.) 309, chapter 18, § 168.

The evidence here is much stronger than that confronting the supreme court of Oklahoma in *Campbell v. John Deere Plow Co.*, 197 Okla. 403, 172 P. (2d) 319, where the note recited that it was payable at the company's home office. The conclusion there reached was that the agency was a question of fact. The court announced its conclusions in the following paragraph:

"Plaintiff also contends that Mueller not having the note in his possession at the time the final payment was made, defendant made such payment to him at their peril. But in Mackey v. Lefeber, 172 Okla. 99, 45 P. 2d 148, we held that such rule did not obtain where the conduct of the holder was such as to justify the payor in believing that the party to whom he paid the money was the agent of the holder for that purpose."

It was recently held in *Hoiden v. Kohout*, 12 Ill. App. (2d) 161, 138 N. E. (2d) 852, that it is not essential to the establishment of authority to collect that the agent should have the security in his possession.

There is an additional circumstance even more persuasive, that is, before respondents moved from Seattle to New York in September, 1955, they left their warranty deed in the possession of their agent, Wolf. The only possible reason

therefor was for him to deliver it to appellant upon payment of the balance due on the executory contract of sale, which provided that title should not pass until all moneys due under the contract had been paid.

The delivery of the deed, or at least a tender thereof, was a condition precedent to suit on the note which was the final payment under the contract. *Stevens v. Irwin*, 132 Wash. 289, 231 Pac. 783; *Hogan v. Kyle*, 7 Wash. 595, 35 Pac. 399, 38 Am. St. 910; *Underwood v. Tew*, 7 Wash. 297, 34 Pac. 1100. There is no possible reason for the respondents supplying their agent Wolf with the warranty deed other than to receive the final payment.

Delivering the warranty deed to the agent, under such circumstances, is ample authority for the agent to receive the payment on the note under the contract. The controlling rule of law was stated in *Shapiro v. Capital Bakers*, 17 F. Supp. 3, 6, as follows:

"The courts have repeatedly held that, when an agent is entrusted with a deed conveying real estate by the vendor, he has implied authority to deliver the deed and receive the purchase money. Smeade v. Rosen, 121 Cal. App. 79, 8 P. (2d) 507; First National Bank of Coos Bay v. Henry, 30 N. D. 324, 152 N. W. 668; Weir v. Washington Trust Co., 263 Pa. 72, 106 A. 88."

Accord, *Babson v. Cox*, 32 App. D. C. 542; *Vetesnik v. Magull*, 347 Ill. 611, 180 N. E. 390; *Roberts v. Akers*, 162 Ky. 840, 173 S. W. 164; *Brown v. Aitken*, 90 Vt. 569, 99 Atl. 265.

It was aptly stated in *Fairbanks v. Crump Irr. & Supply Co.*, 108 Cal. App. 197, 209, 291 Pac. 629:

"Decisions to the effect that a third person in dealing with an agent must at his peril inquire into the agent's authority have no application where, by reason of the conduct of the principal there is apparently no reason for inquiry."

The direction of the respondent husband to both appellants to deal with the agent Wolf is sufficient evidence of express authority to receive the payment in question, and delivery to him of the warranty deed to the property clothed him with ostensible or apparent authority to act as respondents' agent in receipt of the payment.

The trial court erred in granting the respondents' motion to withdraw the defense of payment from the consideration of the jury and directing a verdict for the respondents. The judgment is reversed, and a new trial is ordered. Appellants will recover costs.

HILL, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.