456 P.2d 181

Parley **MORTENSON** and Edith Mortenson, his wife, Roy Mortenson and Vera Mortenson, his wife, Plaintiffs and Respondents,

**v.**

**FINANCIAL GROWTH, INC.,** Professional United Realty, Floyd E. Benton and Glenn R. Milner, Defendants and Appellants.

No. 11343.

Supreme Court of Utah.

June 25, 1969.

Spafford & Young, Earl S. Spafford, Salt Lake City, for appellants.

Milo S. Marsden, Jr., E. J. Skeen, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

Plaintiffs Mortenson, sellers, sued on the ground of breach of contract to obtain a declaration of termination of the rights of the defendant Financial Growth, Inc., buyer, in a contract of sale of a large ranch property, known as the Mortenson Ranch in Morgan County. Financial Growth denied breach, contended breach by the plaintiffs; and the other corporate defendant, Professional United Realty, counterclaimed for a sales commission. On the basis of the pleadings, documentary evidence, and affidavits the trial court granted plaintiffs' motion for summary judgment, ruling that the plaintiffs had a right to terminate the contract; and dismissed the counterclaim. Defendants appeal.

The contract in controversy was entered into August 25, 1967. By it the defendant Financial Growth Inc., agreed to buy and the Mortensons agreed to sell the Mortenson ranch property consisting of various tracts aggregating approximately 14,800 acres for the sum of approximately $537,-000. (The acreage and total price were to be adjusted according to determinations to be made from title search and surveys as set forth in the contract.) It called for an "earnest money" payment of $3,000, which was paid upon the signing of the contract. The next payment was to be in the amount of $152,730, to be paid on December 1, 1967. The defendants do not dispute, and it is therefore not questioned, that this payment was not then made and has never been tendered. Their position is that they were not obliged to make that payment because the plaintiffs did not timely furnish an abstract or policy of title insurance showing they had fee simple title, which in turn resolves itself into the specific objection that as to certain of the lands involved the mineral rights are reserved to the State and to the Federal Government.

The plaintiffs admit that as to some of the lands the mineral rights are reserved to the State and Federal Governments and thus raise the question of law which is the principal issue in this case: Does the reservation of mineral rights by state and federal statutes constitute an "encumbrance" which prevents the plaintiffs from

conveying "the fee simple title to said property free and clear of all liens and encumbrances" as the contract provides?

· We have neither had called to our attention, nor has our research discovered any case dealing squarely with the problem just stated. However, this court has had presented to it and given consideration to a closely analogous problem. In the case of Flemetis et ux. v. McArthur et ux., 119 Utah 268, 226 P.2d 124 (1951), the buyer had refused to pay because the land patents contained a reservation as follows:

* * * "subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by local customs, laws and decisions of courts; and there is reserved in the lands hereby granted a right thereon for ditches or canals constructed by authority of the United States."

The court stated:

The first clause of the reservation applies to those rights which had vested or accrued at the time of the issuance of the patent. The second clause was included in the patent in compliance with the provisions of an Act of Congress, dated August 30, 1890, contained in 26 Stat. 371, 391, Title 43 U.S.C.A., § 945.

The patent in this instance with the reservations prescribed therein was issued on June 3, 1914, and was recorded in Duchesne County, Utah, on June 3, 1930, which was some fifteen years before the date of the agreement. *The reservations, being based on a public statute and having been publicly recorded, were matters of public knowledge.* The defendants entered into the agreement with notice of their existence. *Purchasers of land must take notice of public statutes restricting the use of the granted premises and such restrictions constitute no breach of covenant or warranty.* [Citation.] [Emphasis added.]

The rationale of the Flemetis case seems applicable here, both as to the reasoning and the conclusion reached. The reservation of mineral rights about which the defendant now complains is based upon federal and state statutes,[1] which had been enacted long prior to this transaction, and which are equally and inexorably effective upon everyone, and presumed to be known to them, buyer and seller alike. Under the circumstances here shown the fair assumption seems to be that the liens or encumbrances assured against in the contract are the usual type of liens or encumbrances arising from the acts of private individuals, and not those created by public law.

1. See Sec. 299, Title 43, U.S.C.A.; Secs. 122, 181, Title 30, U.S.C.A.; Sec. 65–1–15, U.C.A. 1953.

In addition to what has just been said, our conclusion is further borne out by an overall purview of the contract. In 10 legal-sized pages it goes with great specificity into the rights and duties of seller and buyer respecting these lands. The recitals all pertain to irrigated land, dry-farm land, range land, water rights and other matters, including provision for the "release" of designated tracts by the seller on the basis of certain prices per acre, the only purpose of which seems to be for the buyer to obtain clearance of title of such smaller tracts in order to convey to others. Yet in spite of all this, there is no reference whatsoever and indeed no hint concerning mineral rights. We are in accord with the view adopted by the trial court in his ruling as a matter of law that the failure of the defendant Financial Growth to pay the December 5, 1967, payment of $152,730 was a defalcation of so material and substantial a nature as to justify regarding any rights the latter had in the contract as terminated.

We interpolate this observation with respect to the question as to whether the trial court should have ordered the plaintiffs to pay or tender back to defendant Financial Growth the $3,000 initial payment. First it is significant that it is referred to in the contract as "earnest money." Under well known and customary practice in such transactions the fair import of this term is that when a comparatively small sum (in this instance about one-half of one percent of the purchase price) is paid down, it is as an assurance that the party is in earnest and good faith, and that if his being in earnest and good faith fails, it will be forfeited. Moreover, in this instance this issue was not pleaded, nor in any manner raised or presented to the trial court. It would therefore not be proper for us to make a different judgment in that regard on this appeal.

With respect to the counterclaim of Professional United Realty for a real estate commission it is our conclusion that the granting of summary judgment of dismissal was in error because there are material issues which must be tried.[2] The affidavit of Floyd E. Benton, who is referred to therein as an "officer" of Professional United Realty, stated that on February 26, 1966, plaintiffs listed the property with it for six months; that on April 25, 1966, it produced a buyer, Beehive Development Company, which was ready, willing and able to perform according to the plaintiffs' listing offer; and also makes the latter assertion with respect to the transaction with Financial Growth, Inc. hereinabove discussed. The only affidavit filed on behalf of the plaintiffs, that of Parley Mortenson, does not directly deny

---

2. See Rule 56(c), U.R.C.P.; Bullock v. Deseret Dodge Truck Center, Inc., 11 Utah 2d 1, 354 P.2d 559 (1960).

**58**

the assertion with respect to the Beehive Development Company; and this record does not indicate why that transaction was not completed. Nor does it give sufficient information on other essential questions relating to the counterclaim: whether Professional United Realty is seeking to recover on the transaction with Beehive, or the one with Financial Growth; whether there was in fact a fusion of the former transaction with the latter; what the relationship was between these two transactions; and between those companies due to the overlapping of officers; and whether Professional United produced a buyer within proper time who was in fact ready, willing and able to perform according to the plaintiff's listing offer.[3]

In accordance with what we have said above, the judgment of the trial court terminating the rights of Financial Growth, Inc., in the contract of purchase of the Mortenson Ranch from the plaintiffs is affirmed; and the case is remanded for a plenary trial of all issues relating to the counterclaim of Professional United Realty for claimed sales commission. Each party to bear its own costs.

CALLISTER, TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.

3. See F.M.A Financial Corp v. Build, Inc., 17 Utah 2d 80, 404 P.2d 670 (1965).