(598 P 2d 561)

No. 50,253

TEDDIE L. COBLE and BARBARA COBLE, *Appellants,* v. FRANCIS SCHERER, JO ANN SCHERER, and JACKSON & SCHERER, INC., and SUN SAVINGS ASSOCIATION, *Appellees.*

Opinion filed August 17, 1979.

*Robert L. Boyce, Jr.,* of Kansas City, for the appellants.

*Steve Fabert* and *James P. Nordstrom* of Fisher, Patterson, Sayler & Smith, of Topeka, for the appellee Jackson & Scherer, Inc.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: Plaintiffs Teddie Coble and Barbara Coble appeal from a judgment denying them recovery of a $5,000 deposit on a contract for the purchase of real estate.

The plaintiffs seek reversal of the judgment on alternative grounds. (1) There was no meeting of the minds and hence no contract. (2) The contractual agreement specifically limited the liquidated damages for breach of the contract to $1,000. (3) The contract was ambiguous, and since defendant Jackson & Scherer, Inc., drafted the contract, any doubt about its provisions should be resolved against the drafter. (4) The defendant, as drafter of the contract, was guilty of willful and negligent conduct in failing to reduce the parties' agreed understanding to writing.

In February, 1976, the plaintiffs saw a Jackson & Scherer, Inc.,

real estate ad offering for sale land owned by the defendants Francis Scherer and Jo Ann Scherer. Before contacting the real estate agency, the plaintiffs spoke directly to the owners, and on February 8, 1976, they viewed the property. During that time the plaintiffs learned that the property was mortgaged. Plaintiffs testified that they were told that the mortgage payments were in excess of $400 per month, although they were actually $328 per month. Plaintiffs wished to purchase the property, but at all times stated they could not afford monthly payments in excess of $300.

On February 10, plaintiffs listed their own home for sale with Barkyoumb & Co., realtors, and on February 11, visited with Louis Scherer of defendant Jackson & Scherer, Inc., regarding the property. During that conversation the parties discussed the selling price of $77,500 and according to Teddie Coble, plaintiffs informed Scherer that the sale would be dependent upon obtaining a loan. The Cobles intended to sell their own home and another piece of property to partially finance the real estate purchase. Apparently there was also some discussion about the possibility of drawing on a $35,000 savings account that was held in the names of Mrs. Coble and her father-in-law, if necessary. Mrs. Coble denies that plaintiffs represented they could draw on that account to raise the purchase price, and Mr. Coble only mentioned that he thought it might serve as collateral for a loan. Mr. Scherer testified, however, that the Cobles informed him they had the money in their savings account if they did not sell their house.

During the February 11, 1976, meeting, the Cobles told Mr. Scherer that they could only afford monthly payments of $300 and Scherer recalls informing them that the payments under the mortgage held by Francis and Jo Ann Scherer were $328 per month, although the plaintiffs deny that they received this information. Due to the conflicting testimony, it is very difficult to reconstruct what exactly took place at the meeting and what topics were discussed. In fact, even the trial judge acknowledged this dilemma in his opinion. There is no doubt, however, that Teddie and Barbara Coble signed a contract for purchase of real estate that was also signed for Jackson & Scherer, Inc., by Louis Scherer. A short time later Francis and Jo Ann Scherer also signed the agreement. The contract recited that $1,000 was received in part payment for purchase of the property. Additionally, the

contract contained a handwritten provision that another $4,000 cash payment was due February 18, 1976. Both payments were timely made. The $72,500 balance was to be paid by assuming the mortgage of Francis and Jo Ann Scherer held by the Fidelity Savings & Loan, now Sun Savings Association, which amounted to approximately $30,000, and by paying the remainder in cash. Under the agreement, the plaintiffs had until June 11, 1976, to complete the purchase. Also handwritten in the contract were the words "the additional aforesaid $4,000 to be considered earnest deposit." The meaning and significance of the term "earnest deposit" is hotly disputed by the parties.

The events which transpired after signing this contract are uncertain. The plaintiffs submitted a loan application to Fidelity Savings & Loan and talked to Leavenworth Mutual about borrowing approximately $33,000. They decided against obtaining the loan at Leavenworth Mutual because the payments would be more than they could afford. They were initially told by Fidelity that they could not qualify for a loan on the home and that an assumption of the Scherer mortgage was impossible. However, when Mrs. Coble contacted Louis Scherer to notify him of Fidelity's decision and request the return of the plaintiffs' down payment, Scherer informed her that Fidelity was required to allow the plaintiffs to assume the mortgage. For some unknown reason, however, the plaintiffs never entered into any serious discussions with Fidelity or the Scherers about assuming the mortgage. Mrs. Coble claimed that an official at Fidelity had told her that the assumption payments would be between $400 and $450 per month which was more than the Cobles had been willing to pay. No other efforts were made by the plaintiffs to obtain financing to purchase the property.

On March 29, 1976, the plaintiffs' attorney demanded that Jackson & Scherer, Inc., return the $5,000 down payment, but the company declined to do so. Between the latter part of March and late November, 1976, there was no communication between the parties to this action.

In November, 1976, the Cobles met with Louis Scherer and claimed that was the first time they realized that the payments under the assumed mortgage would be $328 per month, although Scherer testified that this was discussed during the February 11 meeting. Scherer further claimed that the entire $5,000 already

paid by the plaintiffs was to be forfeited under the terms of the contract since the purchase of the property had not been consummated prior to June 11, 1976.

The plaintiffs assert that the purchase of the property was contingent upon the sale of their home and other property, but the contract for purchase is silent about such contingency. Plaintiffs then sued to recover their down payment, but the court entered judgment for the defendants, basically finding that the $1,000 was to be forfeited in accordance with the liquidated damages clause of the sales contract, and that the $4,000 which had been designated as "earnest deposit" was part of the stipulated damages. The trial court's letter opinion was filed on April 19, 1978, and on April 27, 1978, plaintiffs moved for a new trial. In a June 1, 1978, letter opinion, the court denied the new trial motion and reaffirmed its earlier opinion that the $4,000 earnest money was part of the "stipulated damages."

We reject the plaintiffs' first contention that there was no meeting of the minds and hence no contract. Whether there was a meeting of minds resulting in a contract is a question of fact, and on appeal this court will only concern itself with evidence supporting the trial court's findings and not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual questions. *Steele v. Harrison,* 220 Kan. 422, 552 P.2d 957 (1976). Here, the plaintiffs testified they read the contract, understood its terms, and were aware that it contained no provisions making the purchase conditional upon the sale of their home and procurement of $300 monthly loan payments. We therefore agree with the trial court's finding that a contract for the purchase of the Scherer residence did, in fact, exist.

We turn next to the determinative issue before the court: whether the real estate contract as prepared by the defendant was ambiguous. Whether a contract is ambiguous is a question of law to be decided by the trial court. However, an unambiguous contract must be enforced according to its terms, without reliance upon parol evidence of understandings or of other prior or contemporaneous agreements that vary the contractual terms. *Quenzer v. Quenzer,* 225 Kan. 83, 85, 587 P.2d 880 (1978), and cites mentioned therein. From the evidence presented it is not disputed that several matters concerning the sale and purchase of the subject property were not placed in the contract as ultimately

prepared by defendant real estate company and signed by all parties to this action. The trial court found that the contract as written contained the final agreement of the parties and the only question of substance concerning the agreement was whether the amounts to be forfeited upon breach were $1,000 or $5,000. The court determined that the amount to be forfeited was $5,000, and apparently found that the contract was ambiguous because it relied on the facts and circumstances surrounding the execution of the document to ascertain its meaning.

We find that the trial court erred in determining that the contract was ambiguous. Therefore, parol evidence admitted to clarify the intent of the parties was improper. It is readily discernible that the contractual provisions are clear and unambiguous and that the trial court should have looked only to the four corners of the instrument to ascertain the forfeiture amount in case of breach. The plaintiffs were to pay, and did pay, $1,000 on the signing of the contract and the additional amount of $4,000 as earnest deposit at a later date. The forfeiture clause is clearly unambiguous and provided that failure to make any payments beyond the initial $1,000 would result in the forfeiture of $1,000 as liquidated damages. The sellers could have easily inserted $5,000 in the forfeiture clause if in fact that is what they intended.

Even if the contract was ambiguous, plaintiffs' loss would still be limited to $1,000. An ambiguous contract must be construed strictly against the drafter and liberally towards the other party. *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979); *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 552 P.2d 917 (1976). The contract must be interpreted as a whole to ascertain the intent of the parties and to achieve a reasonable interpretation. *Crestview Bowl, Inc. v. Womer Constr. Co.,* 225 Kan. at 340.

In the real estate contract before this court, $1,000 was to be forfeited if any payments due under the contract other than the original $1,000 were not met. $4,000 was labeled "earnest deposit." It is reasonable to assume that two amounts with two different labels are susceptible to two different meanings. Because the $1,000 was handwritten in by the realtor, it is also reasonable that he could have inserted a $5,000 figure if he intended the Cobles to forfeit that amount upon failure to consummate the purchase.

It is unnecessary to reach the remaining points argued by the plaintiffs. However, we do find that there was sufficient competent evidence to support the trial court's denial of attorney fees and punitive damages.

Judgment is reversed and remanded with directions to enter judgment for plaintiffs for $4,000.