629 P.2d 996

James S. BRIGHAM and Madaleine Glickman, Plaintiffs/Appellants,

v.

FIRST NATIONAL BANK OF ARIZONA, a national banking association, Defendant/Appellee.

No. 2 CA–CIV 3762.

Court of Appeals of Arizona, Division 2.

March 2, 1981.

Rehearing Denied May 5, 1981.

Review Denied June 2, 1981.

Kerry & Wezelman by Robert A. Kerry and Jonathan H. Randall, Tucson, for plaintiffs/appellants.

Streich, Lang, Weeks & Cardon by William S. Hawgood II and John B. Stewart, Phoenix, for defendant/appellee.

OPINION

HATHAWAY, Chief Judge.

This case presents us with the issue of whether A.R.S. Sec. 33–741, which provides grace periods for forfeiture of the interest of purchasers under contracts for the conveyance of real property, applies to a

straight cash transaction and therefore allows a defaulting purchaser extra time in which to close the sale. We hold that it does not and affirm the judgment entered below for seller.

On June 27, 1979, appellee First National Bank of Arizona (seller) and appellants (purchasers) executed a series of instruments which together may be considered a contract of sale of land located in Pima County, with attendant escrow instructions. The pertinent portion of the agreement provided:

"3. Seller agrees to sell and Buyer agrees to purchase the subject Property for the sum of FOUR HUNDRED FOURTEEN THOUSAND DOLLARS ($414,000.00), payable as follows:

A. Earnest money deposited with Escrow Agent on March 23, 1979     $ 5,000.00

B. Additional earnest money to be deposited into escrow upon the signing of these instructions in the sum of     $ 5,000.00

C. Cash payment due on or before close of escrow     $404,000.00

D. The $10,000.00 earnest money set forth in subparagraphs A and B is nonrefundable and shall be forfeited by Buyer to Seller in the event this escrow fails to close for any reason whatsoever other than Seller's failure to perform."

In addition, paragraph 14 provided that if the escrow conditions were not met by October 29, 1979, the contract would terminate, and that "(i)n the event of such termination, the earnest money previously deposited by Buyer shall be forfeited to Seller as liquidated damages." Time was expressly made of the essence in the agreement. Purchasers were to obtain no possessory interest in the property until the close of escrow.

Purchasers deposited $10,000 earnest money into escrow, but failed to tender the case purchase price by October 29. Seller offered to extend the closing date to November 26 provided purchasers deposited additional earnest money and signed a new agreement. When purchasers did not respond, the escrow was cancelled and they were notified on November 13, 15 days after the original closing date, that the $10,000 earnest money had been remitted to seller. On November 20, seller advised purchasers' attorney that the earnest money had been received and that their interest in the land was forfeited. Purchasers instituted this action for specific performance and breach of contract on November 26. After cross-motions for summary judgment, judgment was entered for seller dismissing purchasers' complaint.

On appeal, purchasers characterize the sales agreement as a purchase contract with payment in three parts. They contend that A.R.S. Sec. 33–741[1] allowed them a 30-day grace period after the October 29 closing date in which to pay their last installment, since they had already paid less than 20% of the purchase price by that date.

We reject any argument that the two prior earnest money payments constituted "installments" or partial payments under a typical installment land contract. The clear and unambiguous terms of the

1. "Sec. 33–741. Forfeiture of interest of purchaser in default under contract for conveyance of real property
A. Forfeiture of the interest of a purchaser in default under a contract for conveyance of real property may be enforced only after expiration of the following periods after the default:
   1. When the purchaser has paid less than twenty per cent of the purchase price, thirty days.
   2. When the purchaser has paid twenty per cent, or more, but less than thirty per cent of the purchase price, sixty days.
   3. When the purchaser has paid thirty per cent, or more, but less than fifty per cent of the purchase price, one hundred and twenty days.
   4. When the purchaser has paid fifty per cent, or more, of the purchase price, nine months."
We note that if the $10,000 earnest money were considered part of the purchase price, it constitutes approximately 2.5% of the entire purchase price.

contract provide otherwise. The first two payments were clearly labeled "earnest money." Under well-known and customary practice, the import of this term is that when a comparatively small amount is paid to an escrow agent, it is as an assurance that the purchaser is in earnest and in good faith, and if he fails to perform the amount will be forfeited. *Mortenson v. Financial Growth, Inc.*, 23 Utah 2d 54, 456 P.2d 181 (1969). The distinction between an installment land contract and an executory contract for the sale of land is central to the solution of this issue:

> "It is important to distinguish the installment land contract from the ordinary executory contract for the sale of land, variously known as a 'binder,' a 'marketing contract,' or an 'earnest money' contract. This latter type of contract is used primarily to establish the parties' rights and liabilities during the period between the date of the bargain and the date of closing, usually only a month or two later, on which title passes to the purchaser and security agreements, if any, are consummated. In contrast, the installment land contract governs the parties throughout the life of the debt, while the earnest money contract is completed at closing when the purchaser either tenders the full purchase price of the land or enters into a separate security agreement. Indeed it is not uncommon for parties to agree to enter into an installment land contract at the closing date of the earnest money contract." G. Osborne, G. Nelson & D. Whitman, Real Estate Finance Law, 79 (1979).

*See also,* 5A A. Corbin, Contracts Sec. 1133 (1964). This agreement was clearly a straight cash sale real estate purchase agreement.

■ When a real estate purchase agreement contains a forfeiture clause that is clearly unambiguous, it must be strictly enforced according to its terms. *Coble v. Scherer*, 3 Kan.App.2d 572, 598 P.2d 561 (1979). We see no fact issue whatsoever that purchasers' default was caused by fraud, ignorance, surprise, accident or mistake. In the absence of these equitable grounds, since the purchasers' breach was deliberate and without justifiable excuse, the forfeiture provision was fully enforceable and seller was entitled to retain the earnest money. *Lundstrom v. Hackl,* 40 Colo.App. 322, 579 P.2d 85 (1978); *see also,* Restatement of Contracts, Sec. 357 (1932).

■ Finally, we reach the issue of whether A.R.S. Sec. 33–741 operated to allow the purchasers under the facts of this case an additional 30 days in which to tender the purchase price. Purchasers contend that the literal language of the statute makes it applicable not only to installment contracts, but to cash sale contracts such as the one in this case. They argue that Arizona courts have never held Sec. 33–741 applicable solely to installment contracts, and that established real estate practices and comparison to statutes from other jurisdictions demonstrate that application of Sec. 33–741 to cash sale contracts is neither absurd nor impossible. We disagree.

Our reading of the Arizona cases construing A.R.S. Sec. 33–741 shows that it has been applied only to installment land contracts. In an early case construing the predecessor to our present forfeiture statute, our supreme court stated that "(t)he evident intent of the law was to protect purchasers *on the partial payment plan* from harsh and inequitable forfeitures heretofore so prevalent, . . ." (emphasis supplied) *Foster v. Bauman,* 34 Ariz. 274, 277, 271 P. 30, 30 (1928). Two more recent cases have rejected the literal reading of Sec. 33–741 purchasers wish us to undertake. In *Hassenpflug v. Hart,* 89 Ariz. 235, 360 P.2d 481 (1961), the supreme court rejected the contention that a purchaser was entitled to a 30-day grace period where she had paid nothing toward the purchase price of the land, despite the fact that nothing is literally "less than twenty per cent of the purchase price." In *Mohave County v. Mohave-Kingman Estates, Inc.,* 120 Ariz. 417, 586 P.2d 978 (1978), the supreme court refused to apply the statute where the purchaser had paid 100% of the purchase price.

> "Clearly, this statute contemplates the typical land contract with installment payments. Against such a background we have no difficulty in construing the

reference to the 'purchase price' to mean 'cash purchase price.' Although a literal reading of the statute might lead to the conclusion that a grace period of nine months extends to those cases in which all of the purchase price has been paid, such a construction does injustice to the plain meaning of the statute. We therefore hold that A.R.S. Sec. 33–741 has no application to cases, such as the one at bar, in which the purchaser has paid 100% of the cash purchase price.

\* \* \* \* \* \*

In sum although the law disfavors forfeitures, when it clearly appears from the terms of the contract that the parties have agreed to a contract that will result in a forfeiture, the courts will enforce it. (citation omitted)" Id. at 423, 586 P.2d at 984.

We agree with the trial court that A.R.S. Sec. 33–741 does not operate to extend a grace period to a defaulting purchaser in a cash real estate purchase contract. The court below did not err in granting judgment for seller.

Affirmed.

HOWARD and BIRDSALL, JJ., concur.