**BISHOP RYAN HIGH SCHOOL,
Plaintiff and Appellee,**

v.

**Layne A. LINDBERG and Barbara J. Lindberg, Defendants and Appellants.**

**Civ. No. 10733.**

Supreme Court of North Dakota.

July 3, 1985.

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff and appellee; argued by Orlin W. Backes, Minot.

Barbara J. Lindberg, pro se and for defendants and appellants.

LEVINE, Justice.

Layne A. Lindberg and Barbara J. Lindberg (Lindbergs) appeal from a county court judgment awarding Bishop Ryan High School (Bishop Ryan) $3,149.19 in its action for recovery of earnest money. We reverse.

On September 2, 1983, the parties executed a written contract by which Lindbergs would purchase a home, owned by Bishop Ryan, for $97,000, to be paid in full by January 1, 1984. The contract required the Lindbergs to execute a $5,000 promissory note payable to Bishop Ryan as earnest money. Shortly after signing the contract the Lindbergs occupied the house.

On December 24, 1983, a fire occurred damaging the fireplace and causing smoke damage in the home. In accordance with the terms of the contract Bishop Ryan maintained insurance on the home.

On January 1, 1984, the Lindbergs failed to pay the $97,000 purchase price. Instead, on January 4, 1984, the Lindbergs paid Bishop Ryan $2,000. Bishop Ryan then made a written offer to allow the Lindbergs until January 28, 1984, to pay the remaining $3,000 earnest money and until February 1, 1984, to pay the $92,000 balance of the purchase price.

The Lindbergs responded with a counteroffer to pay the remaining $3,000 earnest money by January 28, 1984, but with no date certain for payment of the $92,000, in order to give Bishop Ryan "ample time to complete the fire and smoke damage repairs." At the time of these negotiations no repairs had been made, although the home had been examined by an insurance adjuster.

Bishop Ryan rejected this counteroffer and on January 20, 1984, served a notice to quit on the Lindbergs, who vacated the home on January 31, 1984. Bishop Ryan then sued to recover the outstanding $3,000 earnest money.

Following a bench trial the county court determined that the Lindbergs had promised to pay Bishop Ryan the $5,000 as consideration for the use and possession of the home, rather than as earnest money. The trial court concluded that the Lindbergs had paid only $2,000 and awarded Bishop Ryan judgment for the remaining $3,000 plus interest and costs. The Lindbergs appealed.

■ The rationale for the trial court's conclusion is contained in its memorandum opinion.[1] The trial court stated that by executing the note the Lindbergs "agreed and promised to pay to [Bishop Ryan] for value received. The [Lindbergs] received that value, to-wit: the use and possession of the [home]."

■ Earnest money is generally defined as a comparatively small down payment made as an assurance that the purchaser is in earnest and good faith and that if he fails to purchase the property the deposit will be forfeited. *Mortenson v. Financial Growth, Inc.*, 23 Utah 2d 54, 456 P.2d 181 (1969); *Brigham v. First Nat. Bank of Arizona*, 129 Ariz. 160, 629 P.2d 996 (Ariz. App.1981). In effect, earnest money operates as liquidated damages. *Vanlandingham v. Jenkins*, 207 Miss. 882, 43 So.2d 578 (1949); see also, *Eddy v. Lee*, 312 N.W.2d 326 (N.D.1981).

■ The purchase contract explicitly designated the $5,000 note as earnest money, allowing Bishop Ryan to retain this sum as liquidated damages if the Lindbergs refused or failed to complete the purchase.[2] Furthermore, the purchase contract expressly stated that Bishop Ryan would not collect any rent for the Lindbergs' occupancy of the home. Therefore, the trial court's conclusion that the note was the consideration for occupancy of the home was in error.

■ Consequently, because the $5,000 note was earnest money, and not rent, Bishop Ryan's recovery of the $3,000 balance of the earnest money was proper only if the Lindbergs had not complied with the purchase contract. The record does not contain the Lindbergs' answer to Bishop Ryan's complaint, but it appears the Lindbergs defended on the ground that their obligation to pay the earnest money was conditioned upon Bishop Ryan's conveying the home on January 1, 1984, in its same condition as when the contract was signed. In effect the Lindbergs claimed that be-

1. The trial court's memorandum opinion may be used to clarify and provide a clear understanding of its findings and conclusions. *Beneficial Finance Co. of Jamestown v. Lawrence*, 301 N.W.2d 114 (N.D.1980).

2. The earnest money agreement contained in the purchase contract stated that if the Lindbergs "refused or failed to consummate or complete the purchase of the property [Bishop Ryan] may, at [its] option, retain the earnest money paid as liquidated damages for failure to carry out said agreement...."

cause Bishop Ryan did not fulfill a condition precedent they were not obligated to pay the earnest money.[3]

■ The Lindbergs and Bishop Ryan were freely entitled to place conditions precedent on the performance of their respective contractual obligations. See, North Dakota Century Code §§ 9–01–10 through 9–01–16; *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101 (N.D.1982); *Krueger v. Soreide*, 246 N.W.2d 764 (N.D.1976). A condition precedent is a condition which is to be performed before some right dependent thereon occurs or some act dependent thereon is performed. NDCC § 9–01–11; *Evenson v. Hlebechuk*, 305 N.W.2d 13 (N.D.1981). In this case the purchase contract conditioned the Lindbergs' payment of the purchase price, which included the earnest money, upon Bishop Ryan's conveying the home in the same condition it was in when the contract was signed.

■ Before a party can enforce conditional contract obligations, he must follow those requisite conditions for which he is responsible. NDCC § 9–01–16 provides in pertinent part:

"Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself and must be able, and must offer, to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party . . . ."

■ Because of the fire damage Bishop Ryan was unable to comply with the condition to convey the home in the same condition it was in when the contract was signed. Consequently, Bishop Ryan could not require that the Lindbergs pay the earnest money until it had complied with the condition by repairing the home. NDCC § 9–01–16; *Kennedy v. Dennstadt*, 31 N.D. 422, 154 N.W. 271 (1915); *Hender-*

*son v. Morton*, 109 Fla. 300, 147 So. 456 (1933); *Smith v. Keating*, 52 Wash.2d 391, 326 P.2d 60 (1958); Williston, Contracts, § 932 (3 ed.).

■ Bishop Ryan argues that its inability to convey the home undamaged on January 1, 1984, was not an adequate excuse for failure to pay the earnest money because the Lindbergs bore the risk of loss to the property. *Woodward v. McCollum*, 16 N.D. 42, 101 N.W. 623 (1907); see generally, 77 Am.Jur.2d, *Vendor and Purchaser*, § 356; 92 C.J.S., *Vendor & Purchaser*, § 295; Annot. 27 A.L.R.2d 444 (1953). However, risk of preconveyance loss may be otherwise allocated by the terms of the purchase contract. *Rector v. Alcorn*, 241 N.W.2d 196 (Iowa 1976); *Utah State Medical Ass'n v. Utah State Employees Credit Union*, 655 P.2d 643 (Utah 1982).

■ In this case the risk of loss was cast upon Bishop Ryan by language in the purchase contract that the Lindbergs would purchase the home "in its present condition." See, 77 Am.Jur.2d, *Vendor and Purchaser*, § 363; 92 C.J.S., *Vendor & Purchaser*, § 295(b)(2); *Alcorn, supra, Utah State Medical Ass'n, supra*. Here, interpreting the purchase contract in a reasonable manner, NDCC § 9–07–08, to effectuate the parties' intentions, NDCC § 9–07–03, we conclude that the contract language that the Lindbergs "purchase the property in its present condition," indicates a mutual intention to shift the risk of preconveyance loss to Bishop Ryan. This intention is further demonstrated by the language in the contract which required Bishop Ryan to provide fire insurance on the home until the time of title transfer. Therefore, because Bishop Ryan carried the risk of loss, it remained obligated to convey the home in the proper condition before the Lindbergs were required to pay the earnest money.[4] Consequently, the tri-

---

**3.** The Lindbergs did not counterclaim against Bishop Ryan for recovery of the $2,000 payment they made on January 4, 1984. Consequently, that was not an issue either in the trial court or on appeal.

**4.** The issue whether the Lindbergs waived Bishop Ryan's failure to fulfill the condition by paying Bishop Ryan $2,000 on January 4, 1984, was not raised at the trial court or on appeal and therefore it was not considered in our decision.

al court erred in awarding judgment for Bishop Ryan.

For the reasons above we reverse the judgment of the trial court.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, J., concurring in part and dissenting in part.

I do not disagree with most of the legal principles stated in the majority opinion, but I seriously question that they should totally dispose of this particular case. The Lindbergs continued to live in the house for over a month after the fire before they left because of the action brought by Bishop Ryan to have them evicted. They lived in the house from September through January. It is not clear to me whether or not the trial court considered the $3,000 to be recompense for that period as a matter of equity such as the doctrine of quantum meruit.

It may well be that Bishop Ryan was not entitled to seek the additional $3,000 under the earnest-money agreement because, as a result of the fire, the property was not at the scheduled time of closing in the same condition as contracted for. The Lindbergs, however, would have us believe that Bishop Ryan intended they should pay the additional $3,000 without ever having the property repaired with the insurance proceeds. Although that is apparently the Lindbergs' argument, there is no finding to that effect by the trial court and a fair reading of the evidence would not lead to that result. Rather, it appears that Bishop Ryan became concerned that the Lindbergs, who had already failed to post part of the agreed-upon security, a Cadillac car, did not have sufficient security to pay the $3,000 much less the total amount due at the time of closing. Mrs. Lindberg conceded at trial that they did not have the finances to close on January 1, 1984, as provided in the contract.

If, indeed, the Lindbergs were concerned that the premises would not be restored from the damage caused by the fire and smoke, their continued presence in the residence until they were given an eviction notice raises the question of their waiver of that condition. Although the majority opinion indicates, at footnote 4, that the issue was not raised at trial or on appeal, I am not so convinced. The brief for Bishop Ryan discusses the fact that on January 4, 1984, the Lindbergs paid $2,000 to Bishop Ryan. I believe this does raise the issue, at least on appeal. I confess I am not entirely sure of the theory on which the case was tried or the theory on which the case was decided. It appears to me there were several issues left undecided. Therefore, although I would reverse the judgment, I would also remand for a new trial under Rule 35(b), N.D.R.App.P., which rule permits us to remand a case to the trial court for determination of issues that have not been tried if such a determination is necessary or desirable to proper disposition of the case on appeal.