SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| RALPH THOMAS and CAROLEE THOMAS, husband and wife, | ) ) ) | Arizona Supreme Court No. CV-12-0156-PR |

RALPH THOMAS and CAROLEE THOMAS, husband and wife, )   Arizona Supreme Court
)   No. CV-12-0156-PR
)
        Plaintiffs/Appellees, )   Court of Appeals
)   Division One
             v. )   No. 1 CA-CV 10-0761
)
MONTELUCIA VILLAS, LLC, a )   Maricopa County
Delaware limited liability )   Superior Court
company, )   No. CV2009-004659
)
        Defendant/Appellant. )
)
)   **O P I N I O N**
_____)


Appeal from the Superior Court in Maricopa County
The Honorable J. Richard Gama, Judge

**VACATED AND REMANDED**
_____


Opinion of the Court of Appeals, Division One
229 Ariz. 308, 275 P.3d 607 (App. 2012)

**VACATED IN PART**
_____


BEUS GILBERT PLLC                                              Phoenix
      By   Franklyn D. Jeans
           Tiffany E. Cale
           Cassandra H. Ayres
Attorneys for Ralph Thomas and Carolee Thomas

LAKE & COBB, P.L.C.                                              Tempe
      By   Joel E. Sannes
           Kiel S. Berry
           Blake Rebling
Attorneys for Montelucia Villas, LLC
_____


1

**B R U T I N E L**, Justice

¶1      Buyers of a new home anticipatorily breached the purchase contract and then sued to recover progress payments made to the seller during the home's construction.  The contract provided that these payments were to serve as liquidated damages in the event of the buyer's breach.  We hold that the defendant seller, in order to retain the payments, must prove that it was ready, willing, and able to perform under the contract.

## I.

¶2      On January 20, 2006, Ralph and Carolee Thomas signed a contract with Montelucia Villas, LLC for the construction of a custom villa for $3,295,000.  As part of the purchase agreement, the Thomases made three installment deposits totaling $659,000, or twenty percent of the villa's purchase price.  The remainder of the purchase price was due at close of escrow.  Although the deposits became due as construction progressed and could be used by Montelucia rather than held in escrow, the contract characterized them as "earnest money deposits."  The contract also provided, however, that Montelucia could elect to treat the payments as liquidated damages if the buyers breached.

¶3      On April 25, 2008, Montelucia notified the Thomases by letter that it had set the closing date for May 16.  When the letter was sent, Montelucia did not have a certificate of occupancy for the property, which the contract required as a

2

condition for closing escrow.

¶4    The Thomases responded on May 6 with a letter stating that they would not close on May 16 and they were terminating the purchase contract because the agreement was illusory, Montelucia had not performed, and Montelucia had violated Arizona statutes governing the sale of subdivided land. The letter asked Montelucia to return the $659,000 in deposits. Montelucia did not respond to the letter or refund the deposits. Instead, it unsuccessfully attempted to obtain a certificate of occupancy for the property on May 8 and May 14. Montelucia ultimately obtained the certificate on August 27.

¶5    In February 2009, the Thomases sued to recover the deposits. Montelucia counterclaimed for breach of contract.[1] On cross-motions for summary judgment, the trial court ruled that Montelucia had breached the contract by, among other things, not completing certain resort amenities, access points, and infrastructure and not providing a certificate of occupancy by the closing date. The court concluded that the Thomases were entitled to a refund of the $659,000 in deposits.

¶6    The court of appeals reversed and remanded, holding that the Thomases had anticipatorily repudiated the contract by sending the May 6 letter. *Thomas v. Montelucia Villas, LLC*, 229

---

[1]    Montelucia's counterclaim is not before us.

3

Ariz. 308, 310 ¶ 7, 275 P.3d 607, 609 (App. 2012). The court concluded that because Montelucia was not a plaintiff seeking affirmative relief, but instead was seeking to retain the deposits in the face of the Thomases' lawsuit, Montelucia was not required to show its ability to perform. *Id.* at 310–11 ¶¶ 8, 10, 275 P.3d at 609–10.

¶7 We granted review to address whether a defendant must prove ability to perform to retain damages for anticipatory repudiation, a recurring issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

**II.**

¶8 At the outset, the Thomases challenge the court of appeals' holding that they anticipatorily repudiated the contract. They argue that Montelucia breached the contract before May 6, thereby excusing their performance. The Thomases, however, did not seek review on this issue. We therefore accept for purposes of our analysis that the Thomases anticipatorily breached the contract by sending their May 6 letter.

¶9 "An anticipatory repudiation is a breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 283, 681 P.2d 390, 435 (1983) (citing *Kammert Bros. Enters.,*

4

*Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 428 P.2d 678 (1967); Restatement (Second) of Contracts § 277 (1981); 4 Corbin on Contracts § 977 (1951)). Yet, an anticipatory breach, by itself, does not entitle the injured party to damages. To recover damages, "[i]n addition to proving repudiation, the non-breaching party need only show 'that he would have been ready and willing to have performed the contract, if the repudiation had not occurred.'" *Id.* at 288-89, 681 P.2d at 440-41 (quoting *Petersen v. Wellsville City*, 14 F.2d 38, 39 (8th Cir. 1926)). Thus, "[a] party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise." Restatement (Second) of Contracts § 254(1) (1981) ("Restatement").

¶10 The court of appeals held that plaintiffs seeking damages for anticipatory repudiation must show the ability to perform, but that a defendant who seeks to retain damages need not make that showing. *Thomas*, 229 Ariz. at 311 ¶ 10, 275 P.3d at 610. We disagree.

¶11 A distinction between a party seeking affirmative relief and a party trying to retain damages in the face of another's claim is unwarranted. Restatement § 254(1) states that a "[repudiating] party's duty to pay damages" is discharged if the "injured party" would have failed to perform. This

5

language does not distinguish between damages sought by the injured party and damages already obtained from the repudiating party which the injured party seeks to retain. Furthermore, applying the ready, willing, and able requirement to both parties seeking damages and parties seeking to retain damages ensures that the non-breaching party actually suffered injury from the anticipatory repudiation, a primary justification for the requirement. *See Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1275 (2d Cir. 1989) (requiring the non-breaching party to show ability to perform "is merely an application of the general rule that the complaining party must demonstrate that the breach caused him injury"). Likewise, any distinction between the party making the claim — whether plaintiff or defendant — is similarly unwarranted. *See United Cal. Bank*, 140 Ariz. at 283–84, 681 P.2d at 435–36 ("[T]o recover damages for anticipatory breach, *the injured party* need only show that he had the ability to perform his own obligations under the agreement." (emphasis added)).

¶12 Here, the Thomases' anticipatory repudiation on May 6 excused Montelucia from further performance and gave Montelucia a claim for damages for breach. But the anticipatory repudiation alone does not entitle Montelucia to damages. Because the Thomases' duty to pay damages was discharged if Montelucia could not have performed, Montelucia's entitlement to

6

the deposits rests upon its ability to have performed its contractual obligations. If Montelucia could not have closed in accordance with the contract, then the Thomases are under no duty to pay damages for their anticipatory breach, and Montelucia cannot retain the deposits.

¶13 Montelucia argues that it can keep the deposits without showing that it was ready, willing, and able to perform because the deposits were earnest money that was forfeited when the Thomases anticipatorily repudiated the contract. But while the contract referred to the deposits as "earnest money," the deposits are more accurately characterized as progress payments.

¶14 Earnest money is a "comparatively small amount . . . paid to an escrow agent" to show that the "purchaser is in earnest and in good faith." *Brigham v. First Nat'l Bank of Ariz.*, 129 Ariz. 160, 162, 629 P.2d 996, 998 (App. 1981) (citing *Mortenson v. Fin. Growth, Inc.*, 456 P.2d 181 (Utah 1969)). Typically, earnest money remains in neutral escrow until the sale closes or the purchaser has forfeited the earnest money by defaulting on the contract. *See, e.g.*, *Esplendido Apartments v. Olsson*, 144 Ariz. 355, 363, 697 P.2d 1105, 1113 (App. 1984). Earnest money usually does not finance construction.

¶15 The deposits in this case do not serve the traditional function of earnest money deposits. Like progress payments on a construction contract, the deposits here were made at the

7

completion of specific phases of the villa's construction and were immediately available to Montelucia to use "for costs related to the development of the Montelucia Villas." Thus, the deposits did not serve to show the Thomases' good faith; rather they enabled Montelucia to fund the construction. As a result, we conclude that the deposits constituted progress payments rather than earnest money, notwithstanding the contract language. *Cf. Aztec Film Prods., Inc. v. Quinn*, 116 Ariz. 468, 470, 569 P.2d 1366, 1368 (App. 1977) ("It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties is not conclusive, and the controlling elements are the intention of the parties and the special circumstances of the case.").

¶16 Montelucia further argues that it was not required to show that it was ready, willing, and able to perform because the contract characterized the deposits as liquidated damages, and a party seeking liquidated damages need not prove actual damages. We are not persuaded. "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975). A liquidated damages clause relieves the plaintiff of the burden of proving the amount of actual damages caused by the breach.

8

*Mech. Air Eng'g Co. v. Totem Constr. Co.*, 166 Ariz. 191, 193, 801 P.2d 426, 428 (App. 1989). But it does not establish whether a breach sufficient to support damages has occurred. *See Bowen v. Korell*, 587 P.2d 653, 657 (Wyo. 1978) (holding that when a contract contemplates liquidated damages only for a specified breach, "the provision will have no force and effect except upon proof of the breach provided for by the agreement"). Although the contract stipulated the amount of damages, this provision did not relieve Montelucia of the burden to demonstrate its willingness and ability to perform before recovering or retaining any damages.

¶17　　The parties dispute whether Montelucia was able to perform its obligations; therefore, we remand to the superior court for a determination of this issue. On remand, Montelucia, as the party in the best position to marshal the evidence, bears the burden of showing it was able to close in accordance with the contract. *See* 10 Corbin on Contracts § 978 n.11 (1951) (noting that the non-repudiating party "can much more readily prove what the facts were in respect of his own ability to perform"). If it is ultimately determined that Montelucia was ready, willing, and able to perform as required by the contract, the court can then determine the appropriate remedy available to Montelucia under the contract.

¶18　　Both parties request an award of attorney fees

9

pursuant to the contract and A.R.S. § 12-341.01. We deny this request without prejudice to the trial court awarding fees, including those incurred on appeal, to the party that ultimately prevails.

**III.**

**¶19** For the foregoing reasons, we vacate the court of appeals' opinion, except ¶¶ 6-7, and remand to the trial court for further proceedings consistent with this opinion.

_____
Robert M. Brutinel, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Scott Bales, Vice Chief Justice

_____
John Pelander, Justice

_____
Ann A. Scott Timmer, Justice