NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

RALPH THOMAS and CAROLEE THOMAS, husband
and wife, *Plaintiffs/Appellants*,

*v.*

MONTELUCIA VILLAS, LLC, a Delaware
limited liability company, *Defendant/Appellee*.

No. 1 CA-CV 15-0489
FILED 11-22-2016

———————————————

Appeal from the Superior Court in Maricopa County
No. CV 2009-004659
The Honorable Mark H. Brain, Judge

**REVERSED AND REMANDED**

———————————————

COUNSEL

Beus Gilbert, PLLC, Phoenix
By Franklyn D. Jeans, Cassandra H. Ayres
*Counsel for Plaintiffs/Appellants*

Udall Shumway, PLC, Mesa
By Joel E. Sannes, Phil David Ortega
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1　　　　Ralph and Carolee Thomas appeal the superior court's grant of summary judgment to Montelucia Villas, LLC.　For the following reasons, we reverse and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　Both this Court and the Arizona Supreme Court have considered this case previously.　*See Thomas v. Montelucia Villas, LLC*, 229 Ariz. 308, 309, ¶ 1 (App. 2012) ("*Thomas I*"); *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 97, ¶ 17 (2013) ("*Thomas II*").　We rely on the factual recitation set forth in *Thomas II*, adding facts and procedural background as necessary to provide context for the issues framed by the current appeal.

¶3　　　　On January 20, 2006, the Thomases signed a contract with Montelucia for the construction of a custom villa.　*Thomas II*, 232 Ariz. at 94, ¶ 2.　The purchase price was $3,295,000, and the contract required the Thomases to make a 10% "earnest money deposit," followed by two 5% deposits payable at specified construction benchmarks.　The Thomases made three payments totaling $659,000, or 20% of the purchase price.　*Id.* The remaining 80% was due "on or before Closing."　The parties' contract provided that closing would occur "at the time specified by [Montelucia] in an oral or written notice to [the Thomases]."

¶4　　　　On April 25, 2008, Montelucia notified the Thomases by letter that it had set the closing for May 16, 2008.　*Id.* at ¶ 3.　When that letter was sent, Montelucia did not yet have a certificate of occupancy for the Thomases' property, which the contract required as a condition for closing escrow.　*Id.*　The Thomases responded on May 6 with a letter stating that they would not close on May 16 and that they were terminating the purchase contract because the agreement was illusory, Montelucia had not performed, and Montelucia had violated Arizona

statutes governing the sale of subdivided land. *Id.* at ¶ 4. The Thomases requested return of their deposits. *Id.* Montelucia did not respond to the May 6 letter and did not return the deposits.

**¶5**　　　In February 2009, the Thomases sued Montelucia to recover their deposits. *Id.* at ¶ 5. Montelucia counterclaimed for breach of contract, alleging the Thomases anticipatorily breached the contract by "refusing to close on the Property as required under the Purchase Agreement" and seeking specific performance, including "a late closing fee of $1,000 per day from May 16, 2008 until closing occurs."

**¶6**　　　On cross-motions for summary judgment, the superior court ruled that Montelucia had breached the contract by, among other things, not completing certain resort amenities, access points, and infrastructure and by not providing a certificate of occupancy by the closing date. *Id.* The superior court concluded the Thomases were entitled to a refund of their deposits. *Id.* Montelucia appealed.

**¶7**　　　This Court reversed and remanded, holding that the Thomases anticipatorily repudiated the contract. *Thomas I*, 229 Ariz. at 309–10, ¶¶ 1, 7. We further concluded Montelucia was not required to demonstrate its ability to perform under the contract. *Id.* at ¶¶ 8, 10.

**¶8**　　　The Thomases petitioned for review, which the Arizona Supreme Court granted. In June 2013, the court issued an opinion vacating this Court's opinion — with the exception of paragraphs six and seven — and remanding to the superior court for a determination of whether "Montelucia was ready, willing, and able to perform as required by the contract." *Thomas II*, 232 Ariz. at 97, ¶¶ 17, 19.

**¶9**　　　On remand, both the Thomases and Montelucia again moved for summary judgment. The superior court granted Montelucia's motion. In its ruling, the court rejected the Thomases' contention that it must assume a May 16, 2008 closing date and instead concluded Montelucia had until January 2, 2009 to perform its obligations under the contract. The superior court found that "a reasonable jury would be forced to conclude that [Montelucia] could have performed by the [January 2, 2009] deadline."

**¶10**　　　After the superior court denied the Thomases' motion for reconsideration and entered a final judgment, this timely appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶11        The Thomases contend the superior court was required to use a May 16, 2008 closing date in determining whether Montelucia "was ready, willing, and able to perform as required by the contract." *Thomas II*, 232 Ariz. at 97, ¶ 17.  We agree.

¶12        Although the phrase "law of the case" is context-dependent, as applicable here, the doctrine provides "that the decision of an appellate court in a case is the law of that case *on the points presented* throughout all the subsequent proceedings in the case in both the trial and appellate courts, provided the facts and issues are substantially the same as those on which the first decision rested." *Ziegler v. Superior Court*, 134 Ariz. 390, 393 (App. 1982).  "[T]he trial court is absolutely bound by the decision and mandate of an appellate court and . . . it is not within the jurisdiction of the trial court to review the appellate court's determination." *Tovrea v. Superior Court*, 101 Ariz. 295, 297 (1966).  The law of the case doctrine does not apply, though, if the prior appeal did not actually decide the issue, is ambiguous, or did not address the merits. *See Grand v. Nacchio*, 214 Ariz. 9, 17, ¶ 19 (App. 2006) (citing cases).

¶13        As relevant here, the following issues were decided in *Thomas I* and *Thomas II* and became the law of the case upon remand to the superior court:

- "On April 25, 2008, Montelucia notified the Thomases by letter that it had set the closing date for May 16."[1] *Thomas II*, 232 Ariz. at 94, ¶ 3.

- The Thomases' May 6, 2008 letter "constituted an anticipatory repudiation of the purchase agreement."

---

[1]        This factual determination refutes Montelucia's assertion that the May 16 date was merely an "estimate."   Moreover, Montelucia's counterclaim alleged the Thomases had refused to close escrow and sought to recover "a *late closing fee* of $1,000 per day *from May 16, 2008 until closing occurs.*" (Emphasis added.)   And in its cross-motion for summary judgment, Montelucia argued that, "On the date of the *scheduled closing, May 16, 2008,*" the Town of Paradise Valley had completed its inspection.  (Emphasis added.)

*Thomas I*, 229 Ariz. at 310, ¶ 7.[2]

- "At the time of the May 6 letter, Montelucia had not breached the purchase agreement; *it still had until the May 16, 2008 closing date to perform its obligations under the contract*." *Id.* (emphasis added).

- The Thomases' anticipatory repudiation, standing alone, did not entitle Montelucia to damages. *Thomas II*, 232 Ariz. at 96, ¶ 12. Montelucia must also prove it could "*have closed in accordance with the contract*." *Id.* (emphasis added).

¶14 This Court's conclusion that Montelucia "had until the May 16, 2008 closing date to perform its obligations under the contract," *Thomas I*, 229 Ariz. at 310, ¶ 7, was undisturbed by *Thomas II*. And contrary to Montelucia's contention, the May 16, 2008 closing date was central to the issue decided in *Thomas I*: whether, as Montelucia alleged, the Thomases breached the purchase contract by refusing to close escrow on May 16, 2008. The Thomases' anticipatory repudiation and Montelucia's ability to perform must be measured by the same standard. *See, e.g.*, *Thomas I*, 229 Ariz. at 310, ¶ 7 ("Before an anticipatory repudiation will be found, there must be a positive and unequivocal manifestation on the part of the repudiating party that he will not render the required performance *when it is due*.") (emphasis added).

¶15 Nor does the record support Montelucia's contention that applying the law of the case doctrine to this determination would be "manifestly unjust." *See Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 482–83 (1986) (Law of the case doctrine "should not be strictly applied when it would result in a manifestly unjust decision."); *Sibley v. Jeffreys*, 81 Ariz. 272, 277 (1956) ("We are of the opinion that a ruling on one appeal if manifestly or palpably erroneous is not to be treated as conclusive on subsequent appeal of the same case."). On the contrary, permitting Montelucia to now rely on a closing date other than May 16 would be manifestly unjust.

---

[2] The Thomases did not seek review of this Court's anticipatory repudiation determination. *See Thomas II*, 232 Ariz. at 95, ¶ 8. As a result, the supreme court left intact paragraphs six and seven of *Thomas I* addressing anticipatory repudiation. *See id.* at 97, ¶ 19.

¶16 Montelucia selected the May 16 date. And the counterclaim makes clear that May 16, 2008 was the operative date for Montelucia's anticipatory repudiation claim. The counterclaim alleged that the Thomases repudiated the purchase contract by refusing to close escrow on May 16 and asserted Montelucia was entitled to a "late closing fee" of $1,000 per day "from May 16, 2008 until closing occurs." There would, of course, be no "late" closing fee commencing on May 16 if May 16 were not the closing date.

¶17 Montelucia argues that, even assuming a May 16, 2008 closing date, summary judgment in its favor was appropriate because it could have performed its contractual obligations as of that date or within the purchase contract's 60-day cure period. Although we may affirm the superior court's judgment if it is correct for any reason, *Wertheim v. Pima Cty.*, 211 Ariz. 422, 424, ¶ 10 (App. 2005), the record reveals disputed issues of material fact regarding Montelucia's ability to perform as of May 16.

¶18 The purchase contract required a certificate of occupancy for the Thomases' property as a condition for closing escrow. *Thomas II*, 223 Ariz. at 94, ¶ 3. The contract also included other requirements, stating:

> BUYER ACKNOWLEDGES THAT ESCROW WILL NOT CLOSE UNTIL THE TOWN OF PARADISE VALLEY HAS ISSUED AN OCCUPANCY CLEARANCE AND THE "VILLAS INFRASTRUCTURE" AND "VILLAS AMENITIES" HAVE BEEN COMPLETED. IN ADDITION, IN ACCORDANCE WITH THE TOWN DOCUMENTS, AN OCCUPANCY CLEARANCE WILL NOT BE ISSUED AND ESCROW WILL NOT CLOSE UNTIL CERTAIN PORTIONS OF THE MONTELUCIA HOTEL HAVE BEEN COMPLETED AND/OR FINANCED.

¶19 Montelucia obtained a certificate of occupancy for the Thomases' property on August 27, 2008. *Id.* at ¶ 4. Even assuming (without deciding) that Montelucia was entitled to avail itself of the 60-day cure period included in the purchase contract, August 27 is 103 days after May 16.

¶20 Montelucia contends the Town of Paradise Valley ("the Town") would have issued a certificate of occupancy for the Thomases'

villa as of May 16, 2008. But the record suggests that, at that point in time, the Town would issue the certificate only if the Thomases signed a "waiver" letter, acknowledging the ongoing "active construction site" and uncompleted improvements that the Town required in the Special Use Permit ("SUP"), including "life safety and building code requirements."

¶21 The parties dispute whether the Thomases had any obligation to sign such a waiver and whether it materially altered the benefit of their bargain. Additionally, factual questions exist regarding whether Montelucia had completed the "Villas Infrastructure" and "Villas Amenities" as of May 16, 2008 and whether the contractually contemplated "portions of the Montelucia Hotel [had] been completed and/or financed" — all of which the purchase contract required before the close of escrow, notwithstanding the Town's waiver of other requirements in the SUP.[3]

## CONCLUSION

¶22 The superior court erred by not adopting a May 16, 2008 closing date in determining whether Montelucia had the ability to perform its contractual obligations. Because genuine issues of material fact exist regarding Montelucia's ability to perform as of that date, we reverse the judgment of the superior court and remand for resolution of that issue. We express no opinion about whether, on remand, that question is susceptible to resolution by further motion practice or whether it must be submitted to a trier of fact.

¶23 The Thomases request an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01. We deny this request without

---

[3] Montelucia relies on deposition testimony by a Town official, who testified the Town would not have issued certificates of occupancy if infrastructure and amenities remained incomplete. Although this evidence tends to support Montelucia's position on this point, it is not irrefutable proof that the obligations *imposed by the purchase contract* (as opposed to the SUP) were in fact complete. Montelucia argued before this Court that the requirements contained in paragraph four of the purchase contract were somehow vitiated by a subsequent clause in the contract. Whether that interpretation is factually and legally correct is an issue the superior court can address on remand, after both sides have had an opportunity to litigate the issue.

prejudice to the superior court awarding appellate fees to the party ultimately prevailing on the substantive merits. The Thomases, however, are entitled to recover their taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA