NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LE CANARD INC, et al.,
*Plaintiffs/Appellants*,

v.

FRANK S. THORPE, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 20-0679
FILED 11-30-2021

Appeal from the Superior Court in Maricopa County
No.  CV2017-007412
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Law Firm of Richard T. Treon, Phoenix
By Richard T. Treon
*Counsel for Plaintiffs/Appellants*

Porter Law Firm, Phoenix
By Robert S. Porter
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

---

**W E I N Z W E I G**, Judge:

¶1        Le Canard, Inc., Randall Andrus and Dana Andrus appeal from an adverse judgment on their claims for anticipatory breach of contract and interference with a business expectancy, and from the superior court's award of attorney fees to the Thorpe Revocable Trust ("Trust"). Because the judgment is supported by substantial evidence, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        In December 2003, Randall Andrus joined a real estate venture with Frank Thorpe and Kenn Francis, forming PRA/LB, LLC ("PRA"). Andrus owned 20% of PRA through Le Canard; Thorpe owned 20% through the Thorpe Revocable Trust ("Trust"); and Francis owned the rest through Pacific Investments Limited Partnership and Pacific Realty Advisors, Inc. Le Canard and the Trust each invested $133,000 in PRA.

¶3        PRA acquired a membership interest in Broadway 101 Venture, LLC ("B101"), a second venture formed to acquire and develop 72.5 acres of land near Broadway and Dobson Roads in Mesa. B101 had acquired the parcel from Motorola in April 2004, and needed to demolish several older buildings standing on it. PRA was responsible for all demolition and environmental remediation and was promised some of the land for its efforts. Andrus often worked on site as PRA's representative.

¶4        Then came the Great Recession of 2008, and Andrus needed cash. He turned to Thorpe. They negotiated a Membership Interest Purchase Agreement dated March 12, 2009, under which the Trust acquired Le Canard's stake in PRA for $131,000. But Le Canard retained an option to repurchase that stake. To exercise the option, Le Canard was required to repay the Trust's $131,000 purchase price, plus 15% interest. The option

---

[1]        After a bench trial, this court views the facts in the light most favorable to affirming the trial court's judgment. *Ariz. Biltmore Hotel Villas Condos. Ass'n v. Conlon Grp. Ariz., LLC*, 249 Ariz. 326, 329, ¶ 3 (App. 2020).

clause required Le Canard to exercise the option "prior to or simultaneously with" two events, both tied to PRA's anticipated land acquisition from B101, including (1) PRA's sale of that land, or (2) "upon the expiration of the loan" PRA needed "to finance the acquisition of [that land] (or any extension or replacement thereof)." To preserve the option, Le Canard also needed to cover any capital contributions required of a 20% stakeholder "within 45 days following notice."

¶5 Just weeks later, in late March 2009, the B101 development was completed, and B101 conveyed 18 acres of the development (the "Real Property") to PRA. To finance the deal, PRA borrowed $1,500,000 from Reliance Bank of Missouri. SunWest Bank later acquired the loan from Reliance Bank in February 2011 and pushed the maturity date to January 2014.

¶6 By 2013, Andrus understood the substantial value of Le Canard's option. Thorpe and Andrus remained in touch. In November 2013, Thorpe updated Andrus on the status of PRA's loan, explaining the loan was set to mature on January 31, 2014, and unless PRA secured an extension, it would owe $1,150,000: "As you can see there is a possibility we will have to come up with a considerable amount of cash." Thorpe added that PRA would "wait to pay [the bank] either when we close the construction loan (approx[imately] April) or we will pay it off ourselves." Andrus asked for a meeting with Thorpe to "go over the options that I have come up with that best works for everyone," adding that his "ultimate goal would be to stay in for everything to the very end but I do not know what form that will be."

¶7 Around six weeks later, on January 8, 2014, SunWest Bank sent notice to PRA that the loan would mature on January 23. Thorpe emailed Andrus: "I guess you and I need to talk to see how [Le Canard is] going to fund [its] interest." Thorpe followed up by email on January 25, informing Andrus: "I received notice today that our loan was due on [January 23]." That same day, Andrus and Thorpe met to discuss Le Canard's options.

¶8 The Trust repaid PRA's loan on January 28 in exchange for a promissory note from PRA and a deed of trust on the Real Property. Kenn Francis later explained the Trust repaid the loan because PRA would have otherwise been required to issue a capital call.

¶9 More emails were exchanged on January 29. Thorpe wrote: "As we discussed on the phone yesterday, we have to pay off the Sunwest

[sic] loan since it matured on 1/23/14. We are paying it off on 1/30/2014. The payoff amount is $1,151,656.47. In addition, we are probably going to have some other cash calls to pay for real estate taxes & insurance. I know this is not what you wanted to hear, and we are not happy about it, too. Although, we have all known this was a possibility." Andrus responded: "I know the situation and I am working on a solution. I spoke to two people yesterday and I am making appointments for two more as soon as I can. I thought this would be the last thing that would happen based upon the feedback from the lender so I did not have any plan for this. I am going to try and get it done as soon as I can."

¶10            By January 2014, the option price for Le Canard to reacquire its former interest in PRA was around $270,000, after interest. If a cash call was needed to repay the loan, Le Canard would also be responsible for a capital contribution of $230,000. Andrus said the option clause "requires any cash calls to be within 45 days of request. I am sure you would like for something sooner and that is what I am trying to do." PRA never issued a cash call.

¶11            Months later, in May 2014, Le Canard had still not tendered the option price, but Andrus told Thorpe he was looking for a lender. Thorpe said it was too late because the option had "long ago expired," when the Trust repaid PRA's loan. Thorpe added: "You have known since January of this year that our existing loan was called and a new one was placed. As per our agreement, that triggered the expiration of your option. This is why I kept you in the loop for the previous year about the possibility of the loan expiration."

¶12            This lawsuit followed. Randall Andrus, his wife Dana, and Le Canard sued Frank Thorpe, his wife Michelle, and the Trust in May 2017, asserting several claims. After discovery and summary judgment, only two claims remained: (1) Le Canard's breach of contract claim against the Trust, and (2) Randall and Dana Andrus' and Le Canard's tortious interference with business expectancy claim against the Trust and Frank Thorpe.

¶13            A three-day bench trial was held on those claims. The court admitted over 120 exhibits and heard testimony from four witnesses, including Andrus and Thorpe. A few months later, the superior court issued its findings of fact and conclusions of law, dismissing both claims with prejudice. Andrus and Le Canard appealed. We have jurisdiction. *See* A.R.S. §§ 12-2101(A), -120.21.

4

## DISCUSSION

**¶14** On appeal from a bench trial, we review the superior court's legal conclusions de novo and defer to its findings of fact unless clearly erroneous. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). We consider the evidence in the light most favorable to upholding the court's ruling. *Id.* And we affirm the court's judgment if correct for any reason. *FL Receivables Tr. 2002–A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, 166, ¶ 24 (App. 2012).

## I. Breach of Contract: Anticipatory Repudiation

**¶15** Le Canard argues the superior court erroneously entered judgment for the Trust on Le Canard's claim for breach of contract. Le Canard contends the Trust breached the option agreement by anticipatory repudiation in May 2014, when Thorpe told Andrus that Le Canard's option had "long ago expired." Thorpe counters that Le Canard's option to repurchase the PRA stake had already expired in late January 2014, when the Trust repaid PRA's loan.

**¶16** A breach of contract action may be maintained when a party anticipatorily repudiates a contract by a "positive and unequivocal manifestation" that it will not perform when the time for performance becomes due. *Diamos v. Hirsch*, 91 Ariz. 304, 307 (1962) (citations omitted). Anticipatory repudiation "giv[es] rise to a claim for damages and also excus[es] the necessity for the non-breaching party to tender performance." *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 95, ¶ 9 (2013) (citations omitted). But the non-breaching party cannot recover damages for anticipatory repudiation unless it "would have been ready and willing to have performed the contract, if the repudiation had not occurred." *Id.*; *see also* Restatement (Second) of Contracts § 254(1) (1981) ("A party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise.").

**¶17** After hearing evidence and argument, the superior court rejected Le Canard's anticipatory repudiation claim on two independent grounds. First, the court found that Le Canard's "option expired on January 28, 2014, when the loan obtained to finance the acquisition of the property expired." Second, even assuming the option remained active, the court found that Le Canard could not prevail because "[t]he credible testimony established that neither Le Canard nor Randall Andrus were

financially able to perform Le Canard's obligations under the Option Agreement in January 2014 or in May 2014."

¶18      We need only reach the court's second ground to affirm its judgment. Even assuming the option agreement had not expired, and even assuming the Trust repudiated the option agreement in May 2014, Andrus still needed to prove that Le Canard could have exercised the option, which required Le Canard to pay around $500,000, including $270,000 to repurchase the PRA stake from the Trust and $230,000 in capital contributions to PRA. *See Thomas*, 232 Ariz. at 95, ¶ 9.

¶19      The court found that neither Andrus nor Le Canard were financially able to exercise the option agreement in May 2014, and reasonable evidence supports that factual finding. Andrus conceded he did not have enough cash to repurchase PRA's interest in May 2014, and instead needed to find a loan. Nor did Andrus present any evidence of a lender prepared to extend the loan to Le Canard. The record has no documents from or communications with potential lenders, no loan agreements, no lender testimony, no lines or letters of credit, and no evidence of due diligence to secure a large commercial loan. And while Andrus claimed he could have borrowed $500,000, the court heard and rejected his testimony as not credible and uncorroborated. Beyond that, Andrus himself had declared personal bankruptcy less than 18 months earlier, casting doubt on his ownership interest in and ability to secure financing for Le Canard. Because Le Canard has shown no reversible error, we affirm the superior court's judgment.[2]

## II.    Tortious Interference with Business Expectancy

¶20      Andrus and Le Canard also challenge the superior court's entry of judgment on their tortious interference claim. A claim of tortious interference requires (1) the existence of a contract; (2) the defendant's knowledge thereof; (3) a breach of the contract induced by the defendant; (4) the absence of privilege or justification; and (5) damages. *Marmis v. Solot Co.*, 117 Ariz. 499, 501 (App. 1977).

¶21      After trial, the superior court found the "evidence did not credibly establish that [Frank] Thorpe individually interfered or acted

---

[2]    Andrus contends that because he requested equitable relief, he only needed to offer to perform. Not so. To claim equitable relief, a party must show they were "ready, willing and able" to perform. *Nelson v. Cannon*, 126 Ariz. 381, 385 (App. 1980).

improperly, causing any breach." The record has reasonable evidence to support that finding. To begin, Thorpe reminded Andrus about Le Canard's option and kept him apprised of the loan's status. Nor did Thorpe make false promises about the option. Because Le Canard has not shown clear error, we affirm the superior court's judgment.

## III.    Attorney Fees

¶22        Andrus and Le Canard appeal the superior court's award of attorney fees to the Trust. The court has broad discretion to award attorney fees under A.R.S. § 12-341.01. *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562, ¶ 39 (App. 2014). We discern no abuse of discretion. Andrus argues the award should be reversed based on "Plaintiffs['] destitute financial circumstances," but he offers no legal authorities in support. He does not argue the award was unreasonable and, in fact, the superior court subtracted nearly $100,000 from the Trust's attorney fee request. Nor does he argue the court lacked authority to award attorney fees and costs.

## CONCLUSION

¶23        We affirm. Thorpe and the Trust are awarded their reasonable costs on appeal as the prevailing party upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA