NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAWN CALLAWAY, *Plaintiff/Appellant,*

*v.*

NORTH IRONWOOD, LLC, *Defendant/Appellee.*

No. 1 CA-CV 21-0337
FILED 3-29-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-004131
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Law Office of Timothy M. Collier, PLLC, Scottsdale
By Timothy M. Collier, William A. Weber
*Counsel for Plaintiff/Appellant*

Stoops Denious Wilson & Murray, PLC, Phoenix
By Michael T. Denious
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C R U Z**, Judge:

¶1        Dawn Callaway appeals from the superior court's judgment, following a bench trial, finding in favor of North Ironwood, LLC, on her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In February 2017, Callaway and North Ironwood entered into a Real Estate Purchase Agreement and a Lease Agreement (collectively, "the Agreements") for Callaway to lease and then subsequently purchase residential real property owned by North Ironwood.  Under the terms of the Purchase Agreement, Callaway had an extended escrow of two years.  During this two-year period, Callaway would lease the property while renovating the existing home and making other improvements.  The Purchase Agreement also provided that all plans for construction and improvements were subject to pre-approval by North Ironwood.  Callaway agreed to purchase the property for $885,000 at the conclusion of the lease term, with the close of escrow to take place on or before January 31, 2019.  Callaway deposited $10,000 in earnest money, which was to be applied to the purchase price at closing.  The parties agreed that if Callaway breached the Purchase Agreement, the earnest money was to be paid to North Ironwood as liquidated damages.

¶3        Callaway took possession of the property, the initial construction plans were approved by North Ironwood, and she began making improvements.  In the first part of 2018, Callaway emailed revised plans to North Ironwood, and requested the approval of a permit to construct a guest house.  However, North Ironwood did not approve the construction of a guest house and did not authorize Callaway to request permits for one.  North Ironwood informed Callaway she could build the guest house after she purchased the property, and that she could accelerate the closing date for the purchase if she so desired.  Callaway did not respond to that communication.

¶4 In the four months leading up to the closing date, North Ironwood wrote Callaway to remind her of the January 31, 2019 closing date and that there were steps that needed to be taken prior to then. Callaway did not respond. A final notice was sent January 10, 2019, in which North Ironwood made clear it was expecting Callaway to close on the property, and it would seek all available remedies if she did not do so.

¶5 Shortly after, Callaway gave written notice to North Ironwood, stating North Ironwood breached the parties' contract, in part because it refused to approve the construction of the guest house. Callaway stated she was choosing not to exercise her "option" to purchase the property, and she requested $35,000 in damages for the improvements she had made on the property. She also sought a return of the earnest money. North Ironwood refused Callaway's demands and they both made competing demands to the escrow title agent for the $10,000 earnest money.

¶6 As pertinent here, Callaway sued North Ironwood for breach of contract and breach of good faith and fair dealing. Callaway alleged damages in the amount of the $10,000 earnest money deposit and another $85,000 she allegedly incurred while making improvements on the property.

¶7 After a bench trial, the superior court found in favor of North Ironwood on Callaway's contract claims. Because Callaway did not close on the sale of the property, the superior court found that Callaway was in breach, and under the terms of the Purchase Agreement, she forfeited the return of the earnest money. The superior court awarded North Ironwood its attorneys' fees and costs.

¶8 Callaway timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes section 12-120.21(A)(1).

## DISCUSSION

¶9 Callaway argues the court erred in finding the parties entered a binding Purchase Agreement rather than a lease with an option to purchase. Callaway further argues she was within her contractual rights when she decided not to purchase the property at the end of the lease term and her earnest money deposit should have been returned to her.

¶10 Matters of contract interpretation present issues of law we review de novo. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). In interpreting a contract, our purpose is to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto Ins. Co.*, 175 Ariz. 148, 152 (1993). In

determining the parties' intent, we "look to the plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983). "A contract must be construed so that every part is given effect, and each section of an agreement must be read in relation to each other to bring harmony, if possible, between all parts of the writing." *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 175 Ariz. 273, 277 (App. 1993). Determinations of fact, however, are reviewed applying a clearly erroneous standard. *In re Johnson*, 231 Ariz. 556, 557, ¶ 1 (2013). The meaning of ambiguous language in a negotiated contract turns on what the parties intended, and to the extent credibility determinations must be made, the intent of the parties is a question of fact. *Taylor*, 175 Ariz. at 154, 159.

**¶11**    The superior court considered the fact that the document's title is "Real Estate Purchase Agreement with Escrow Instructions," highlighting the terms Purchase Agreement as a basis for its finding that the language in the Lease and Purchase Agreements demonstrates the parties' intent to enter into a purchase agreement and not an option to purchase. That the contract included a clause stating that section headings and captions "in no way define, limit, construe or describe the meaning, scope or intent of such sections, nor in any way affect this Agreement," is of no consequence, because "Real Estate Purchase Agreement with Escrow Instructions" is the name of the document, not a section heading or caption. Moreover, the Purchase Agreement referred to the period during which Callaway leased the property as an "extended escrow period." The Purchase Agreement also contains several provisions that make it clear Callaway was obligated to purchase the property: (1) "Buyer agrees to purchase the Property from Seller"; (2) "Buyer hereby agrees to purchase the Property from Seller, and Seller hereby agrees to sell to Buyer the Property for the Purchase Price as defined below in this Agreement"; and (3) The closing "*shall* occur on or before 31st January, 2019." (Emphasis added.)

**¶12**    Additionally, the Purchase Agreement contains language pertaining to a ten-day "inspection period" during which Callaway had "the right to immediately cancel" the contract. As North Ironwood notes, if the parties had intended to enter into an option to purchase, an inspection period would be unnecessary; Callaway would have the opportunity to refuse to exercise the option, and thereby not purchase the property, until the date of closing.

**¶13**    The Purchase Agreement provides that "[t]he Earnest Money shall be applied to the Purchase Price at Closing." But because Callaway

failed to close on the property, she was in breach, and the Purchase Agreement provides that in those circumstances, North Ironwood "shall retain the Earnest Money as its damages and, thereafter, neither party shall have any further obligations to the other under this Agreement." Accordingly, given Callaway's material breach, North Ironwood is entitled to the $10,000 earnest money deposit.

¶14 Callaway, however, cites to one phrase in a provision in the Lease Agreement she contends evidences the parties' intent to enter into an option agreement:

> Tenants are leasing the Property for the purpose of taking possession and constructing a residential structure and improvements to the Property during the term of the Lease, *with the right to purchase the Property* subject to and pursuant to the terms and conditions of that separate Purchase Agreement entered into between Tenant and Landlord.

¶15 However, there is no express language in either contract that indicates the parties agreed to an option to purchase; there is no use of the word "option," there was no requirement of an "option fee" to be paid by Callaway, nor did the Agreements contain any other language typically found in an option to purchase, like the manner in which the option had to be exercised. The provision Callaway cites does not necessitate a finding that the parties entered into an option agreement. Moreover, if that single provision in the Lease Agreement was construed as an option, it would render the language in the Purchase Agreement explicitly outlining the terms of the sale as meaningless, inconsistent, and contradictory. *See supra* ¶¶ 11-12; *see also Chandler Med. Bldg. Partners*, 175 Ariz. at 277 ("[T]he court will not construe one provision in a contract so as to render another provision meaningless."). Further, if the Agreements were interpreted as constituting an option, they would be silent and ambiguous as to what happens to the earnest money if Callaway did not exercise the option.

¶16 Callaway also points to a provision in the Lease Agreement that states at the termination of the lease, the options are (a) "Tenant shall return all keys and vacate the Premises, or (b) the successful closing of escrow under that separate Purchase Agreement." But these are the terms under which the *lease* necessarily comes to an end, nothing more. Option (a) is not inconsistent with finding Callaway was under an obligation to close escrow, and it did not foreclose North Ironwood's ability to seek remedies if she failed to do so. The Lease Agreement and Purchase Agreement expressly provide that they are to be read together, and the

Purchase Agreement contains the mandatory purchase language and North Ironwood's remedies in the event of a breach. Looking at the contract as a whole, and not solely two isolated provisions within the Lease Agreement, the evidence supports the superior court's finding that the parties' intent was to enter into a purchase agreement.

¶17 Additionally, interpreting the Agreements as an option would lead to an absurd result where North Ironwood would gain nothing if Callaway had the ability to cancel the Purchase Agreement at any time before closing without incurring any financial penalty. That is, under Callaway's interpretation of the Agreements, she could withdraw from the Purchase Agreement at any time before the closing date and nonetheless be entitled to the return of the $10,000 earnest money. Callaway argues the consideration for entering into the option was that North Ironwood would keep any improvements and fixtures she made to the property during the two-year lease term. But such benefits are illusory. Under Callaway's interpretation of the contract, there would be no guarantee she would actually make any improvements to the property before cancelling the Agreements, let alone improvements that would enhance the property's value. *See Roe v. Austin*, 246 Ariz. 21, 27, ¶ 17 (App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result."); *see also Chandler Med. Bldg. Partners*, 175 Ariz. at 277 ("The court must apply a standard of reasonableness in contract interpretation.") (citation omitted).

¶18 Callaway also looks to extrinsic evidence to support her argument that the parties intended to enter into an option, including emails between the two parties that took place a year *after* the Agreements were entered. In the email conversation, North Ironwood's representative notified Callaway that it was not interested in approving the construction of a guest house before closing "should [Callaway] not be able to exercise the purchase." He again stated the seller was not interested in approving the construction "should [Callaway] not exercise the option."

¶19 Extrinsic evidence is inadmissible if it "would actually vary or contradict the meaning of the written words." *Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 29 (App. 2004). But even assuming arguendo this evidence is admissible, the superior court was not required to find it persuasive evidence that the parties entered into an option agreement. The representative uses the word "option" only once, and at trial, he testified that he was not using the word as a legal term of art in that context. The representative testified that he had only meant to say the seller was not interested in Callaway building a guest house in case she did not end up closing on the property, but he did not mean to imply she would not be in

breach if she decided not to close. He further testified that it was always his understanding the parties entered into a purchase agreement. The superior court found his testimony credible.

**¶20** Further, North Ironwood sent notices to Callaway in October and December 2018 regarding the upcoming closing date, which make clear the seller believed Callaway was obligated to close. A January 2019 notice sent shortly before the closing date informed Callaway that North Ironwood was insisting "upon strict performance" and it would "exercise all rights and remedies available under the Agreement and the Lease." North Ironwood acted consistent with that intent when it demanded the release of the earnest money from the escrow title agent after Callaway refused to close.

**¶21** Callaway additionally contends the parties' intention to execute an option to purchase is evidenced by the fact North Ironwood did not send a notice of default to Callaway. Callaway argues that North Ironwood would have sent a notice of default if it believed she was obligated to purchase the property. However, even assuming arguendo that North Ironwood's written communications fell short of the requisite language in a notice of default, a few weeks before the closing date, Callaway sent a letter informing North Ironwood she would not be closing on the property. "A party anticipatorily repudiates a contract when he or she provides a positive and unequivocal manifestation that the party will not perform when his or her duty to perform arises." *Ratliff v. Hardison*, 219 Ariz. 441, 443, ¶ 9 (App. 2008) (citation and internal quotation marks omitted). Callaway's anticipatory repudiation excused North Ironwood from further performance under the Agreements. *See Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, ¶ 12 (2013); *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137 (1987) (noting "a party which repudiates its contract obligations on the basis of an incorrect interpretation of a contract has committed an anticipatory breach").

**¶22** Finally, Callaway argues that even if she did breach the Agreements by failing to close, North Ironwood waived an alleged breach by failing to send the required notice of default and giving her an opportunity to cure. Callaway has waived this argument by failing to raise it in the superior court. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 15 (App. 2004). In fact, at trial, Callaway specifically confirmed to the superior court that "[Callaway] is not making the argument that [North Ironwood] waived its right to keep the $10,000 earnest money by failing to provide notice and an opportunity to cure." Regardless, as noted above, North Ironwood was excused from further performance after Callaway's

anticipatory repudiation, and so it was under no obligation to send a notice of default. *See Thomas*, 232 Ariz. at 96, ¶ 12.

**¶23** Callaway argues that should we vacate any portion of the judgment, the attorneys' fees awarded to North Ironwood should be vacated, as well. Because the superior court did not err in finding in favor of North Ironwood on Callaway's contract claims, we affirm the superior court's award of attorneys' fees.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm. Both parties request their attorneys' fees and costs on appeal. Pursuant to the terms of the parties' Purchase Agreement, we award North Ironwood its reasonable attorneys' fees and costs upon compliance with ARCAP 21.

